UNITED STATES DISTRICT COURT
SOUTHEN DISTRICT OF NEW YORK

| | |
|---|---|
| RAPTOR TRADING SYSTEMS, INC.,<br><br>                              Raptor,<br><br>v.<br><br>DAVID BETH AND MICHAEL WALLACH,<br><br>                              Defendants. | No. 16-CV-3430 (RA)<br>Related Case: No. 16-CV-5392 (RA) |

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Raptor Trading Systems, Inc. ("Raptor") files this Second Amended Complaint for Declaratory and Injunctive Relief against Defendants David Beth ("Beth") and Michael Wallach ("Wallach") (collectively, "Defendants") and states as follows:

### PARTIES

1. Plaintiff Raptor is a Maryland corporation with its principal place of business at 5950 Symphony Woods Road, Suite 400, Columbia, Maryland 21044.

2. On information and belief, Defendant Beth is a citizen of the State of New Jersey.

3. On information and belief, Defendant Wallach is a citizen of the State of New Jersey.

### JURISDICTION AND VENUE

4. Raptor, in this First Amended Complaint, seeks a declaration that it has exercised a "Call Option," pursuant to a Put/Call Agreement constituting Schedule B of a Purchase Agreement entered into by the parties as of February 17, 2015 (the "Put/Call Agreement"), by delivering a "Call Notice" dated March 17, 2016, and sent from the Raptor office at 292 Madison Avenue, 22nd floor, New York, NY 10017 to the offices of Wallach Beth Capital LLC, at 100

Wall Street, Suite 6600, New York, NY 10005, accompanied by a wire transfer of $1,088,608.96 on or before March 21, 2016.[1]

5.  Raptor also seeks an injunction requiring Wallach and Beth to comply with their obligations under the Put/Call Agreement by delivering to Raptor 130 shares of validly issued, fully paid and non-assessable shares of Raptor Class D Stock (the "Call Shares"). The Put/Call Agreement and the relevant pages of the Purchase Agreement are annexed hereto as Exhibit 1. The Call Notice is annexed hereto as Exhibit 2.

6.  Defendants, by letters from their attorney dated March 22 and April 29, 2016, deny that Raptor has effectively exercised its "Call Option", claiming that the "Call Price" is not the amount tendered by Raptor but rather is $4,354,435.84. Defendants have demanded that the remainder of the Call Price as they have calculated it be paid by Raptor, and have refused to deliver the Call Shares until the sum demanded is paid.

7.  Therefore there is an actual controversy between the parties over which this court has jurisdiction pursuant to 28 U.S.C. section 2201.

8.  There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy in in excess of $75,000, exclusive of interest and costs.

9.  A substantial part of the events and omissions giving rise to Raptor's claim occurred in this District, where Raptor exercised its Call Option, and this action arises out of the refusal of Wallach and Beth to carry out their obligations under the Put/Call Agreement including the delivery of the Call Shares to Raptor at its office in Manhattan. There is therefore venue in this district pursuant to 28 U.S.C. section 1391(b)(2), and jurisdiction over Wallach and Beth pursuant to NYCPLR section 302.

---

[1] Terms with initial capitalization and stated for the first time herein in quotation marks have the meaning assigned to them in the Put/Call Agreement.

10. Pursuant to Section 5.9 of the Put/Call Agreement, the parties have agreed that this action may be commenced and prosecuted in any federal or state court located in the State of New York.

## FACTS

11. In the fall of 2014, Defendants Beth and Wallach were the owners of all the shares of a company named OMEX Systems, Inc. ("OMEX")[2]. At that time, OMEX owned technology which enabled its customers to execute certain transactions and operations on computers.

12. Raptor was in the fall of 2014 and remains a company that both owns and uses technology that provides services and capacities to its customers different than those provided by OMEX but both provide technology services to the financial services industry.

13. Raptor on the one hand, and Beth and Wallach on the other, entered into negotiations to merge OMEX into Raptor.

14. During the course of those negotiations, on December 5, 2014, the parties signed a term sheet which set forth certain parameters for the proposed merger. The term sheet was signed for Raptor by its chief executive officer Teddy Lardos, and for OMEX by David Beth. A copy of the term sheet is annexed hereto as Exhibit 3.

15. The term sheet provided for the transfer of all the equity in OMEX from Beth and Wallach, its owners, in exchange for the issuance to Beth and Wallach, in equal tranches, of eight percent of Raptor's stock, and the provision by Raptor to Beth and Wallach of a note for $2,140,000, payable in five yearly installments commencing on the first anniversary of the

---

[2] At that time, OMEX was configured as a limited liability company named OMEX Systems, LLC.

3

Closing of the merger, and other terms including participation in certain possible upsides and payments to Beth and Wallach of certain directors' fees.

16. Of significance to the present litigation were the Put and Call rights set out in the term sheet. Raptor was to have the right to regain its stock, starting in year 7 after the closing, at a call price of "8% of 4X gross", and Beth and Wallach were to have the right, also in year 7, to put their Raptor shares to Raptor at "65% of Call Price" with an adjustment for possible upside payments that might have occurred before the put/call date.

17. The effect of the provisions in the term sheet was to set both the put and call prices at four times the gross earnings of Raptor in year 6.

18. The transaction effectuating the merger concluded a few months later, with an effective date of February 17, 2015.

19. Many of the provisions of the term sheet were incorporated in the transaction documents in their original form.

20. However, there was a material set of changes in the put and call provisions. The put price remained at 65% of the call price, as was true in the term sheet, but Raptor was enabled to reacquire its shares without the waiting period, at a Call Price of 8% of the gross revenue of the previous year.

21. The effect of the change was both significant and understandable. Instead of locking Raptor into a 6-year partnership with Beth and Wallach, with the prospect that after six years Raptor would have to buy back its stock, if Beth and Wallach so chose, at four times the year-six gross earnings, Raptor could buy back its stock, at a time it elected, for the previous year's net earnings, with no multiple.

22. The change was obvious from the most casual reading of the Put/Call Agreement. Section 1.1 retained the seven-years delay on Beth's and Wallach's put right, while Section 1.2, on the very next page, provided that Raptor could exercise its call right by a Call Notice "delivered to [Beth and Wallach] ... at any time after February 17, 2015."

23. The put price remained at 65% of the call price, but the call price was explicitly defined at "eight percent (8%) of the gross revenues of Raptor in the year immediately prior to the Call Date."

24. It is apparent from the term sheet itself that the parties reserved the power to vary its provisions. In paragraph 9 of the term sheet, the final paragraph above the parties' signatures, they agreed that "this Term Sheet is not intended to (and will not) be a binding agreement or offer, and this Term Sheet will not give rise to any right or obligation based on any legal or equitable theory (including any right to continue negotiations or to negotiate in good faith).

25. The Purchase Agreement, at section 8.16, includes a broad and all-encompassing integration provision that explicitly covers the Put/Call Agreement as a schedule to the Purchase Agreement. Pursuant thereto, the terms of the Put/Call Agreement as signed by the parties "supersedes all prior and contemporaneous agreements and understandings, whether written or oral, among the Parties with respect to the subject matter hereof and thereof."

26. The Put/Call Agreement establishes that Beth and Wallach sold their company to Raptor for a sum embodied in a five-year note, paid positions on the Raptor board, and stock, which if it appreciated had an unlimited potential for additional consideration. Raptor agreed to the payment terms, but retained in the Put/Call Agreement the power to reacquire its own shares if it was in its financial interest to do so. That is what Beth and Wallach agreed to, and that is the deal that Raptor has now enforced by issuing the Call Notice dated March 17, 2016.

27.     In their Counterclaims in this action, Beth and Wallach allege, among other things, that Raptor's exercise of its Call Option was "defective and void because Raptor's Board [of Directors] undertook the action without the participation, or even knowledge, of Wallach and Beth as Class D representatives." Wallach & Beth Countercls. ¶ 44. However, even assuming that this allegation is true, Raptor's decision to exercise its Call Option is not defective or void because Beth and Wallach only received the Call Shares as representatives of the holders of Class D common stock with no right to vote on any matter.

28.     Nonetheless, in light of Beth and Wallach's allegation, Raptor's Board of Directors called a special meeting of the Board of Directors and Stockholders to ratify and reissue the Call Notice and discuss a proposed sale of Raptor to a third-party purchaser. On September 21, 2016, Raptor sent Beth and Wallach written notice of a special meeting for October 4, 2016 and invited Wallach and Beth to participate in the meeting as stockholders of Raptor.

29.     Among other things, the notice provided that the Board of Directors would consider a proposal, subject to stockholder vote, that would call the Raptor shares owned by Wallach and Beth by ratifying and reissuing the Call Notice dated March 17, 2016, and re-fixing the Call Date for the effectuation of the call for October 28, 2016.

30.     Raptor subsequently adjourned the special meeting to October 14, 2016, and changed the Call Date.

31.     On October 14, 2016, Raptor's Board of Directors and Stockholders held the special meeting to reissue and ratify the Call Notice dated March 17, 2016 and re-fix the Call Date for the effectuation of the call for November 11, 2016. At the special meeting, the

stockholders of Raptor voted unanimously to ratify and reissue the March 17, 2016 Call Notice and re-fix the Call Date of the Call Shares for November 11, 2016.

32. Although Wallach and Beth were provided with express notice of the October 14, 2016 meeting of Raptor's Board of Directors and Stockholders and their right to participate, they chose not to participate and in fact did not appear at the October 14, 2016 meeting.

### FIRST CAUSE OF ACTION

33. Plaintiff realleges the contents of paragraphs 1 to 32 as if fully set forth herein.

34. Plaintiff is entitled to a declaration that it has delivered an effective Call Notice, that it has tendered the Call Price, and that Beth and Wallach are obligated to deliver their Raptor shares to Raptor.

### SECOND CAUSE OF ACTION

35. Plaintiff realleges the contents of paragraphs 1 to 34 as if fully set forth herein.

36. Because the object of this action, which is the reconveyance of the Raptor shares held by Beth and Wallach to Raptor, is not a remedy accomplished by an award of money damages, plaintiff is entitled to a judgment ordering Beth and Wallach to deliver their Raptor shares to Raptor.

**WHEREFORE,** plaintiff demands judgment as set forth in paragraph 34 and 36 above, together with the costs of this action.

Dated: November 1, 2016      **ANDERSON KILL P.C.**

By: /s/ Jeffrey E. Glen
Jeffrey E. Glen, Esq.
Raymond A. Mascia Jr., Esq.
Ethan W. Middlebrooks, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

7

E-mail: jglen@andersonkill.com
E-mail: rmascia@andersonkill.com
E-mail: emiddlebrooks@andersonkill.com

*Attorneys for Plaintiff Raptor Trading Systems, Inc.*