# Exhibit D

# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Jeffrey E. Glen, Esq.
Jglen@andersonkill.com
212-278-1009

**Via ECF and Hand Delivery**                                              September 29, 2017

The Honorable Debra Freeman
United States District Court
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007

      Re:    *Raptor Trading Sys., Inc. v. Beth, et al.*, No. 1:16-cv-3430-RA-DCF
             *Wallach, et al., v. Lardos, et al.*, No. 1:16-cv-5392-RA-DCF

Dear Judge Freeman:

      This firm represents Plaintiff Raptor Trading Systems, Inc. ("Raptor") and Defendants Theodoros Lardos ("Lardos"), Mark Hinman ("Hinman"), Nelson Ignacio ("Ignacio"), and Alejandro Gil ("Gil") in the above-referenced actions. Raptor respectfully submits this opening letter brief regarding Michael Wallach ("Wallach") and David Beth's ("Beth") claim that Raptor has waived attorney-client privilege and/or work product protection for certain documents on Raptor's privilege log. (Ex. A (Raptor's Privilege Log).)[1]

      As explained below, Raptor has properly withheld from production two categories of documents: (1) privileged communications between Raptor's general counsel, Gil, and Raptor's board of directors, Lardos, Hinman, and Ignacio, regarding litigation strategy that were created after Wallach and Beth objected to Raptor's call notice; and (2) attorney work product regarding this litigation, which was shared with counsel for a potential third-party purchaser of Raptor.

**1.    Background Relevant to the Current Discovery Dispute**

      In February 2015, Raptor entered into a merger transaction whereby it purchased from Wallach and Beth a company known as OMEX Systems, Inc. ("OMEX"). (Raptor's Second Am. Compl., 1:16-cv-03430-RA-DCF, Docket Entry No. 26 ¶¶ 13, 18.) As part of the consideration for the sale, Wallach and Beth received 130 shares of non-voting Raptor stock. (*See id.* ¶¶ 5, 15.) The stock is subject to a Put/Call Agreement between Raptor and Wallach and Beth. Under that agreement, Raptor has a call option, which permits Raptor to repurchase the stock for "eight percent (8%) of the gross revenues of Raptor in the year immediately prior to the Call Date." (*Id.* ¶ 23.) In March 2016, Raptor exercised the call option by sending a call notice and wire transfer calculated at the amount stated in the Put/Call Agreement. (*Id.* ¶ 4.)

---

[1] With the exception of the May 5, 2017 Joint Status Letter, which is filed on the Court docket, all other exhibits to the letter briefs have been stamped "Confidential" pursuant to the Protective Order in these actions and are being delivered under seal in hard copy to Your Honor's Chambers.

**Anderson Kill P.C.**

The Honorable Debra Freeman
September 29, 2017
Page 2

In March 2016, by letter from their attorneys, Wallach and Beth denied that Raptor effectively exercised the call option, claiming that the call price is not governed by the Put/Call Agreement that Wallach and Beth signed at the closing of the merger transaction while represented by counsel, but instead is governed by a term sheet that the parties signed in December 2014, which was several months before the merger transaction was finalized and the Put/Call Agreement was signed. (Ex. B (letter from Wallach & Beth's counsel).) Wallach and Beth have refused to deliver the stock. Accordingly, on May 9, 2016, Raptor commenced *Raptor Trading Systems, Inc. v. Beth, et al.*, No. 16-CV-3430-RA-DCF, seeking a declaration that Raptor effectively exercised its call option. Wallach and Beth counterclaimed and filed *Wallach, et al., v. Lardos, et al.*, No. 16-CV-5392-RA-DCF, asserting tort claims.

In October 2016, the parties entered into settlement talks with the assistance of Your Honor. As part of those talks and during discovery, Raptor produced to Wallach and Beth a series of e-mails and documents created during the negotiation of and prior to the completion of the Raptor-OMEX merger transaction. Raptor produced these documents to assist in settlement negotiations because they contained communications between Gil and the Raptor board of directors regarding the setting of the call price that were *made contemporaneous with and during the negotiation of the Raptor-OMEX merger transaction.*

In addition, in 2016, Raptor entered into confidential discussions with a potential third-party purchaser of Raptor. The discussions were and are strictly private and confidential and subject to a non-disclosure agreement and confidentiality provisions. (Ex. C (Non-Disclosure Agreement); Ex. D (Letter of Interest).)

**1.     Wallach and Beth's Waiver Argument Fails Because All Communications on Raptor's Privilege Log Created After Wallach and Beth Rejected Raptor's Call Notice Concern Litigation Strategy and Therefore Are Not the Same Subject Matter as the Documents that Raptor Produced to Wallach and Beth**

Wallach and Beth have taken the position that Raptor has waived the attorney-client privilege as to the call price, although they conceded in a joint status report filed with the Court that they do not seek e-mails and documents concerning Raptor's litigation strategy. (Ex. E (May 5, 2017 Joint Status Report).)

Under Federal Rule of Evidence 502(a), a "voluntary disclosure" of communications protected by the attorney-client privilege "generally results in a waiver only of the communication or information disclosed." Fed. R. Evid. 502, advisory committee note. At its broadest scope, waiver of the attorney-client privilege is a waiver of only the subject matter of privileged communications. *See Mitre Sports Int'l, Ltd. v. HBO*, 304 F.R.D. 369, 372 (S.D.N.Y. 2015). Subject-matter waiver should be reserved for rare situations. *See id.* Where a court determines that a party has waived attorney-client privilege as to the subject matter of communications, fairness considerations limit the scope of that waived subject matter. *See Ingenito v. Riri USA, Inc.*, No. 11-CV-2569, 2015 U.S. Dist. LEXIS 171728, at *20 (E.D.N.Y. Dec. 22, 2015) (collecting cases); *see also Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 589 (S.D.N.Y. 2015). Stated otherwise, the waiver extends only to the same subject

**Anderson Kill P.C.**

The Honorable Debra Freeman
September 29, 2017
Page 3

matter as the previously disclosed subject. *See Seyler v. T-Sys. N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011) (citing Fed. R. Evid. 502); *Ingenito*, 2015 U.S. Dist. LEXIS 171728, at *16-25.

In this litigation, Raptor produced documents and communications concerning the negotiation of the transaction between Raptor and OMEX. Those negotiations included discussions of what the call price should be. Assuming for argument's sake that Raptor has waived the attorney-client privilege as to the subject matter of the negotiation and setting of the call price, then any waiver is limited to that particular subject matter.

Here, the subject matter of communications regarding the setting of the call price may be conceived of as having a temporal endpoint. Once the transaction closed in February 2015, the call price was set. Any subsequent communications between Raptor's general counsel and its board members are of a different subject matter.[2] There should be no doubt that the subject matter was altogether entirely different once Wallach and Beth disputed the Call on March 22, 2016. If there was then discussion of the call price by Raptor's general counsel and board members, it was in the nature of Wallach and Beth's dispute and how to handle such a dispute – communications in the context of possible litigation.

Significantly, in the May 5, 2017 joint status letter submitted to Judge Abrams, Wallach and Beth conceded that they "do not seek the production of documents concerning Raptor's litigation strategy in these actions." (Ex. E, at 6 n.1.) In light of that concession, Wallach and Beth are not entitled to any documents concerning Raptor's litigation strategy.[3]

Fairness is a prime consideration here. *See, e.g., In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *see also Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 63-64 (1st Dep't 2007); *cf.* Fed. R. Evid. 502(a)(3). With all pre-March 22, 2016 communications between Raptor, its board members, and Raptor's general counsel in hand, Wallach and Beth have a full and fair opportunity to establish their claims and defenses for their cases based on all the communications that existed prior to the call price being disputed. Wallach and Beth will have available Raptor's documents concerning Raptor's exercise of the call in March 2016. Communications after Wallach and Beth disputed the call are not necessary for their claims and defenses.

---

[2] In the interests of efficiency, Raptor agreed to produce all documents related to the Raptor/OMEX merger transactions created prior to March 22, 2016 – the date on which the call was disputed. Wallach and Beth agreed that they will not argue that the Raptor's production on June 30, 2017 constitutes a waiver of attorney-client privilege or waiver of work product protection. Raptor removed the privilege log entries for those documents from its privilege log, which explains why the log does not begin at no. 1.

[3] Any documents that retain work product protection in addition to the attorney-client privilege may be withheld on that separate ground. *See Schaeffler v. United States*, 806 F.3d 34, 45 (2d Cir. 2015).

nydocs1-1096802.1

**Anderson Kill P.C.**

The Honorable Debra Freeman
September 29, 2017
Page 4

In this case, the day Wallach and Beth disputed the call price, Raptor contacted outside counsel, which led in a matter of weeks to the commencement of this litigation. (*See* Ex. A, at No. 65.) It would be unreasonable to contend that any purported waiver of privileged communications between a company's general counsel and its board members extends into and past the time litigation is anticipated and/or commenced. Such a contention illogically suggests that the heads of a business entity could never have frank conversations with general counsel. It would undermine the role of the attorney-client relationship in litigation and in the functioning of a business. *See, e.g., Genentech, Inc. v. Insmed, Inc.*, 442 F. Supp. 2d 838, 846 (N.D. Cal. 2006) (observing that "the importance of protecting . . . communication between attorney and client in the heat of litigation should not be lightly disregarded").

For the foregoing reasons, any arguable waiver of Raptor's attorney-client privilege ceased when the subject matter of the privileged communications no longer concerned, or could concern, the setting of the call price and negotiations of the transaction.

## 2. Raptor Did Not Waive Work Product Protection for Documents Shared with Counsel for the Potential Third-Party Purchaser of Raptor

In 2016, Raptor began negotiating with a third-party purchaser for the sale of Raptor. The identity of the third-party is confidential. Raptor and the third-party purchaser agreed that the negotiations and all documents shared during the negotiations were strictly confidential. (Exs. C, D.) Because Wallach and Beth refused to deliver their Raptor stock, the potential purchaser withdrew its offer in late 2016.

Raptor has properly withheld from production certain documents shared confidentially with counsel for the possible third-party purchaser that are protected as attorney work product. As a preliminary matter, there can be no dispute that those withheld documents are work product. *See Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002) ("The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived."). Work product protection covers documents created in anticipation of or because of litigation, including "mental impressions, conclusions, opinions, or theories concerning the litigation." *See United States v. Adlman*, 134 F.3d 1194, 1194 (2d Cir. 1998); *see also SEC v. Collins Aikman Corp.*, 256 F.R.D. 403, 409 (S.D.N.Y. 2009) (defining "core work product" as an attorney's "mental impressions, conclusions, opinions, or legal theories"); Fed. R. Civ. P. 26(b)(3)(A). The documents Raptor is withholding as work product contain or are those exact types of work product: draft legal briefs and memoranda and emails setting forth counsel's mental impressions, conclusions, opinions, and legal theories of the cases. (Ex. A, at Nos. 126, 132 - 135, 140, 141-1, 152, 161- 167, 168-1, 173-1, 176.)

Moreover, these documents and communications have properly been withheld. The work product protection differs from and is broader than the attorney-client privilege. *In re Grand Jury Subpoenas Dated Mar. 19 & Aug. 2, 2002*, No. M 11-189, 2002 U.S. Dist. LEXIS 17079, at *7 (S.D.N.Y. Sept. 11, 2002) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)).

nydocs1-1096802.1

**Anderson Kill P.C.**

The Honorable Debra Freeman
September 29, 2017
Page 5

"[C]ourts generally find a waiver of the work product [protection] only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." *Noval Williams Films LLC v. Branca*, No. 14-cv-4711, 2016 U.S. Dist. LEXIS 173279, at *7-8 (S.D.N.Y. Dec. 14, 2016) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004) (internal quotation marks omitted)); *accord Secs. & Exch. Comm'n v. Beacon Hill Mgmt. LLC*, 231 F.R.D. 134, 146 (S.D.N.Y. 2004) (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234-35 (2d Cir. 1993), and *In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y. 1990)) (same).

Raptor shared work product in the context of confidential negotiations wherein the possible third-party purchaser was represented by counsel and considering acquiring 100% of Raptor's shares from Raptor, logically placing that purchaser at odds with Wallach and Beth. Raptor's sharing of work product therefore did not increase the opportunity for Wallach and Beth to obtain the information, particularly since the discussions were subject to strict confidentiality provisions. Nor was counsel for the third-party purchaser a "conduit" to Wallach and Beth; there has been zero evidence in these litigations that that counsel was aware of Wallach and Beth outside of the context of the lawsuits with Raptor. *See Bowne, Inc. v. Ambase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) ("[D]isclosure to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver of the protection of the rule."). Raptor's disclosure of work product to that other counsel did not waive the work product protection.

Further, it is irrelevant that the counsel with whom Raptor shared work product was transactional counsel for the potential third-party purchaser of Raptor. The Second Circuit has recently reiterated that "[d]ocuments prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *accord Adlman*, 134 F.3d at 1194, 1198-99 ("[A] document created because of anticipated litigation . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. . . . Nothing in [Rule 26] states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope."). Raptor's attorneys would not have shared the work product in anticipated furtherance of a business transaction but for the litigations before the Court.

For the foregoing reasons, Raptor has properly withheld its work product from production to Wallach and Beth.

Respectfully submitted,

Jeffrey E. Glen

cc:    All Record Counsel (via ECF without exhibits and by e-mail with exhibits).

nydocs1-1096802.1