# Exhibit E

# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Jeffrey E. Glen, Esq.
Jglen@andersonkill.com
212-278-1009

**Via ECF and Hand Delivery**                                    October 11, 2017

The Honorable Debra Freeman
United States District Court
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007

      Re:    *Raptor Trading Sys., Inc. v. Beth, et al.*, No. 1:16-cv-3430-RA-DCF
             *Wallach, et al., v. Lardos, et al.*, No. 1:16-cv-5392-RA-DCF

Dear Judge Freeman:

    This firm represents Plaintiff Raptor Trading Systems, Inc. ("Raptor") and Defendants Theodoros Lardos ("Lardos"), Mark Hinman ("Hinman"), Nelson Ignacio ("Ignacio"), and Alejandro Gil ("Gil") (collectively, "Raptor") in the above-referenced actions. Raptor respectfully submits this letter brief in response to Michael Wallach ("Wallach") and David Beth's ("Beth") September 29, 2017 letter brief.

**1.    Wallach and Beth's Waiver Argument Fails Because the Communications on Raptor's Privilege Log Created After Wallach and Beth Rejected the Call Notice Concern a Different Subject Matter Than the Documents that Raptor Produced**

    As an initial matter, Raptor has consistently asserted that there is no waiver of its attorney-client privilege. Contrary to Wallach and Beth's contention, Raptor has in no way conceded that there has been a subject-matter waiver regarding the Raptor/OMEX merger transaction or the call price.

    But even if there was a subject-matter waiver, no further production of Raptor documents would be called for. Raptor produced all of the documents on its privilege log concerning the subject matter of the negotiation of and setting of the call price, which is the only "subject matter" even arguably the subject of a waiver. The only documents that fit within even Wallach and Beth's overly expansive view of subject matter are documents concerning Raptor's litigation strategy, created after the OMEX-Raptor deal, and Wallach and Beth conceded in the May 5, 2017 joint status report filed with the Court that they do not seek e-mails and documents concerning Raptor's litigation strategy. (Ex. E to Raptor's September 27, 2017 Letter Brief.)

    In their initial letter brief, Wallach and Beth focus on part of a single, isolated statement from *Kidder, Peabody & Co. v. IAG International Acceptance Group, N.V.*, No. 94-CV-4725, 1997 U.S. Dist. LEXIS 7108, at *16 (S.D.N.Y. May 21, 1997), that "once [a] waiver is created, parties may not limit the waiver temporally." However, Wallach and Beth selectively ignore the

**Anderson Kill P.C.**

The Honorable Debra Freeman
October 11, 2017
Page 2

prefatory adverb, "[g]enerally." *Id.* And, as Courts in this district have recognized, "[r]ead in isolation, this one sentence is overbroad." *CSI Inv. Partners II, L.P. v. Cendant Corp.*, No. 00-CV-1422, 2006 U.S. Dist. LEXIS 9929, at *6-7 (S.D.N.Y. Mar. 13, 2006).

The Second Circuit has "cautioned against broad generalizations," stressing instead that a court must engage in a case-by-case analysis made under fairness considerations and the specific context in which a party has asserted the attorney-client privilege. *Grand Jury Proceedings v. United States*, 350 F.3d 299, 302 (2d Cir. 2003). In this case, Raptor has asserted the attorney-client privilege consistently and without a doubt as to attorney-client communications regarding the subject matter of anticipated litigation with Wallach and Beth. Unlike in *Kidder, Peabody & Co.*, Raptor has never conceded that there is a waiver of attorney-client privilege. In that case, the plaintiff's counsel admitted that "to the extent" one of its defenses (asserted against a counterclaim) "may relate, even in part, to [plaintiff's] reliance on advice of counsel, attorney-client privilege is waived as to any advice on which reliance may be claimed." 1997 U.S. Dist. LEXIS 7108, at *5-6 (alteration in original). At issue was the plaintiff's asserted good faith defense to the defendant's counterclaims that it "acted at all relevant times . . . in good faith," including in seeking an order of attachment that was directly at issue in the lawsuit, and then in maintaining the litigation. *Id.* at *4. The plaintiff then tried to assert a temporal limitation to its conceded waiver, which the Court rejected as to communications relevant to the admittedly waived subject matter. *See id.* at *9-16. The Court determined that the asserted good-faith defense had been directly placed at issue in the litigation by the plaintiff, and that it necessarily included questions as to whether the plaintiff acted in good faith relying upon its attorneys in maintaining the lawsuit, which reasonably extended to communications regarding aspects of the lawsuit after it commenced. *See id.*

Here, Raptor has produced documents and communications concerning the setting of the call price. Communications regarding litigation over the call price is a different subject matter – particularly when the fact of the matter is that the change in the call price from the term sheet to the final transaction document was reviewed and "okayed" by Wallach and Beth's outside counsel, and then signed and initialed by Wallach and Beth.[1] Wallach and Beth are searching high and low for a smoking gun that does not exist.

---

[1] Further, as set forth in Raptor's September 29, 2017 letter brief, documents that retain work product protection in addition to the attorney-client privilege may be withheld on that separate ground. *See Schaeffler v. United States*, 806 F.3d 34, 45 (2d Cir. 2015). The work product protection differs from and is broader than the attorney-client privilege. *In re Grand Jury Subpoenas Dated Mar. 19 & Aug. 2, 2002*, No. M 11-189, 2002 U.S. Dist. LEXIS 17079, at *7 (S.D.N.Y. Sept. 11, 2002) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). And, for the sake of argument, even if Raptor or its counsel had somehow waived work product protection, "that waiver is not absolute. Once the lawsuit is filed, the waiver of work product protection ends." *Carl Zeiss Jena GmbH v. Bio-Rad Lab., Inc.*, No. 98-cv-8012, 2000 U.S. Dist. LEXIS 10044, at *4 (S.D.N.Y. July 19, 2000) (quoting *Dunhall Pharmaceuticals v. Discus Dental*, 994 F. Supp. 1202, 1206 (C.D. Cal. 1998)).

**Anderson Kill P.C.**

The Honorable Debra Freeman
October 11, 2017
Page 3

This case is more akin to *CSI Investment Partners II, L.P. v. Cendant Corp.*, No. 00-CV-1422, 2006 U.S. Dist. LEXIS 9929 (S.D.N.Y. Mar. 12, 2006). To be sure, there, unlike here, the defendant claiming attorney-client privilege asserted that there was a firm end to that subject matter that could be measured by date. *See id* at *6. The adverse party disputed that cessation of the waiver, and, like Wallach and Beth, pointed to the isolated sentence that "parties may not limit the waiver temporally." *Id.* at *7. The Court acknowledged that rule "generally", and then determined that the party seeking to show the existence of a waiver must prove that "(1) the very subject of privileged communications was **critically relevant** to the issue to be litigated; (2) there was a good faith basis for believing such essential privileged communications existed; and (3) there was **no other source** of direct proof on the issue." *Id.* at *7-8 (quoting *Allen v. West Point-Pepperell, Inc.*, 848 F. Supp. 423, 429 (S.D.N.Y. 1994) (emphasis in original)). Like here, the defendant in *CSI Inv. Partners II* agreed to produce all potentially protected communications through a date certain, contending that the subject matter of attorney-client communications was different after that date. *See id.* at *11. The Court agreed that there was "no reason entitling [the adverse party] to learn about attorney-client communications concerning other" subject matters than what was critically relevant to the subject placed at issue in the case. *Id.* That Court looked closely at the facts of the case and the context in which the privilege was asserted and found that any waiver had a firm stop – just like this Court should do here.

Moreover, in this case, Wallach and Beth have not shown there to be "a good faith basis for believing such essential privileged communications" that they seek exist. *CSI Inv. Partners II*, 2006 U.S. Dist. LEXIS 9929, at*7-8. They simply believe that some sort of direct proof of their theory of the case exists in some form of communication or document made after the call was disputed on March 22, 2016. But they have not set forth any valid reason why they have this belief.

As stated in Raptor's September 29, 2017 letter brief, fairness is a prime consideration here. *See, e.g., In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987); *see also Deutsche Bank Trust Co. of Ams. v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 63-64 (1st Dep't 2007); *cf.* Fed. R. Evid. 502(a)(3). With the pre-March 22, 2016 communications between Raptor, its board members, and Raptor's general counsel, Wallach and Beth have a full and fair opportunity to establish their claims and defenses for their cases based on the communications that existed prior to the call price being disputed. They have shown no need for communications concerning anticipated and actual litigation, and in fact have foresworn a search for such communications in the May 5, 2017 joint status letter.

Therefore, for the foregoing reasons, any arguable waiver of Raptor's attorney-client privilege ceased for communications after March 22, 2016 – when the subject matter of the privileged communications no longer concerned, or could concern, the setting of the call price and negotiations of the transaction.

nydocs1-1097508.1

**Anderson Kill P.C.**

The Honorable Debra Freeman
October 11, 2017
Page 4

### 2. Wallach and Beth Are Not Entitled to Raptor's Properly Withheld Work Product Shared with Counsel for the Potential Third-Party Purchaser of Raptor

Raptor has properly withheld as work product draft legal briefs and memoranda and emails setting forth counsel's mental impressions, conclusions, opinions, and legal theories of the cases, shared with counsel for the potential third-party purchaser of Raptor. (*See* Raptor's September 29, 2017 letter brief, Ex. A, at Nos. 126, 132 - 135, 140, 141-1, 152, 161- 167, 168-1, 173-1, 176); *cf. also Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998). To the extent that work product recites historic facts, such recitation is made in the context of advancing strategy, theories, and opinions regarding this litigation. And, to the extent there are historic facts recited in that work product, they are facts already known by and available to Wallach and Beth from produced sources.

In their September 29, 2017 letter brief, Wallach and Beth contend that "[t]o the extent that the communications with the third-party potential purchaser set forth what actually happened, they are the only way for Wallach and Beth to discover the truth." But Wallach and Beth already know the truth: they signed a transaction agreement reviewed by their counsel. Despite Wallach and Beth's continued insistence to the contrary, there are simply no documents setting forth an otherwise alternative truth. Wallach and Beth have in their possession the documents concerning the setting of the call price.

If the Court were to take the drastic measure of finding that work product protection should no longer apply to Raptor's properly withheld work product – generated during and concerning this litigation – it would undermine the very purpose of the work-product doctrine. *See Adlman*, 134 F.3d at 1196-97 (setting forth purpose of work-product doctrine and "strong public policy" underlying it). This is particularly so where, as here, there is no true substantial need for the information because Wallach and Beth already have in their possession the information concerning the negotiation and setting of the call price. Forcing Raptor to produce its properly withheld work product where there is no substantial need for it (or undue hardship in obtaining information on setting of the call price) threatens the ability of counsel for a party to set forth legal opinions and work product during a litigation involving a client. *See Hickman v. Taylor*, 39 U.S. 495, 511 (1947) (recognizing that when an attorney's work is available to an adversary, "much of what is now put down in writing would remain unwritten"). And, where there is a possible transaction with a third party being undertaken concurrent with litigation, the parties' abilities to conduct business will be hamstrung if counsel cannot freely share legal opinions concerning that litigation in a confidential setting, such that an adversary is unlikely to receive those opinions, because the transacting parties will be hampered in their ability to perform adequate due diligence. *See Bowne, Inc. v. Ambase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993).

Further, Wallach and Beth's argument that Raptor has selectively disclosed work product while withholding other work product is preposterous. Using Wallach and Beth's examples, in documents RTS00006851 and RTS00006835 (Exs. M and N to Wallach and Beth's September 29, 2017 letter brief, respectively), Raptor redacted litigation strategy and discussions from its counsel while producing unredacted portions of statements by counsel for the potential third-

**Anderson Kill P.C.**

The Honorable Debra Freeman
October 11, 2017
Page 5

party purchaser of Raptor. This is because the only work product over which Raptor and its attorneys may and does assert protection is that belonging to it or that belonging to its retained counsel. Raptor and its attorneys may not, and do not, assert work product protection over any work product not belonging to them, such as litigation strategy discussions or opinions by a third-party's attorney. Only that third-party or its attorney could assert its own work-product protection.

Moreover, and in any event, in the May 5, 2017 joint status letter submitted to Judge Abrams, Wallach and Beth conceded that they "do not seek the production of documents concerning Raptor's litigation strategy in these actions." (Raptor's September 29, 2017 letter brief, Ex. E, at 6 n.1.) And, in a June 5, 2017 email from the undersigned to counsel for Wallach and Beth, Raptor set forth the following position:

> In order to narrow the dispute regarding withheld communications with counsel for [the potential third-party purchaser], Raptor will identify those documents and communications shared between counsel for [the potential third-party purchaser] and Raptor on Raptor's privilege log that Raptor asserts constitute work product. Raptor will produce the remaining documents shared between counsel for [the potential third-party purchaser] and Raptor on the condition that Wallach and Beth agree not to argue that such production constitutes a waiver of the attorney-client privilege and/or work product.

Counsel for Wallach and Beth in a June 27, 2017 response letter stated that "Wallach and Beth agree not to argue that th[e then-]impending production by Raptor constitutes a waiver of the attorney-client privilege or **work product protection**." (Ex. F, letter from Wallach and Beth's counsel) (emphasis added). Wallach and Beth have apparently backed away from their assertions made to the Court and agreements with Raptor when they argue that Raptor has selectively disclosed work product, and instead persist with a failed quest to obtain Raptor's work product.

Wallach and Beth have not shown they have a substantial need for Raptor's work product or an undue hardship in obtaining the information they seek. Thus, for the foregoing reasons, Raptor has properly withheld its work product from production to Wallach and Beth. However, although Raptor does not believe it to be necessary, Raptor will consent to an *in camera* review of its withheld work product if the Court determines it must undertake such a review.

Respectfully submitted,

Jeffrey E. Glen (En)

cc:   All Record Counsel (via ECF without exhibits and by e-mail with exhibits)

nydocs1-1097508.1